UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESLEY RODNEY, | : | |
|     Petitioner, | : | |
| | : | |
| vs. | : | Civil No. 3:05cv479 (PCD) |
| | : | |
| IMMIGRATION AND | : | |
| NATURALIZATION SERVICE, | : | |
|     Respondent. | : | |

**RULING ON PETITION FOR WRIT OF MANDAMUS**

This case involves a petition for a writ of mandamus to be issued to the United States Immigration and Naturalization Service ("INS")[1] ordering them to deport Petitioner, Wesley Rodney,[2] to his native country of Guyana. For the reasons that follow, the Petition for Writ of Mandamus [Doc. No. 3] is **dismissed**.

**I.   BACKGROUND**

Petitioner is a citizen and native of Guyana. (See INS Order to Show Cause, Ex. A to Resp't Resp. to Order to Show Cause.) Petitioner entered the United States at or near New York, New York on or about December 22, 1987 as an immigrant. (Id.) On February 5, 1993, Petitioner was convicted of possession of narcotics in violation of Connecticut General Statutes § 21a-279(a). (Id.) On June 16, 1995, an Immigration Judge ("IJ") ordered Petitioner deported to Guyana based on his failure to appear at his deportation hearing. (See IJ Order, Ex. B to Resp't Resp. to Order to Show Cause.) The IJ's order indicates that Petitioner waived his right to file an

---

[1] On March 1, 2003, the INS was abolished and its enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement ("BICE"), a bureau within the Department of Homeland Security. (See Resp't Resp. to Order to Show Cause 1 n.2.)

[2] According to the INS, Petitioner is also known as "Eion Johnson." (See Resp't Resp. to Order to Show Cause 1 n.1.)

appeal with the Board of Immigration Appeals and as a result, the deportation order became final when it was issued on June 16. (Id.)

On July 26, 1999, Petitioner was sentenced to fifteen years in state prison based on his conviction for sale of narcotics. (See Connecticut Dep't of Corrections Inmate Information, Ex. C to Resp't Resp. to Order to Show Cause.)  Thereafter, on November 23, 1999, the INS placed a detainer on Petitioner because he was subject to removal from the United States. (See Immigration Detainer, Ex. D to Resp't Resp. to Order to Show Cause.)  Currently, however, Petitioner is continuing to serve his state prison sentence, which does not expire until May 18, 2014. (See Connecticut Dep't of Corrections Inmate Information.)  According to the INS, when Petitioner completes his state prison sentence, he will be taken into BICE custody and immediately deported. (Resp't Resp. to Order to Show Cause 2.)

On March 17, 2005, while still in state custody, Petitioner filed the instant Petition for Writ of Mandamus seeking to be deported to Guyana immediately.  This Court issued an Order to Show Cause on April 6, 2005.  The INS filed its response on April 25, 2005, and Petitioner filed his response on August 26, 2005.

II.     DISCUSSION

    A.     **Mandamus Jurisdiction**

"The Second Circuit has held that a writ of mandamus may issue only when there is: '(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and preemptory duty on the [respondent's] part to do the act in question; and (3) lack of another available, adequate remedy.'" Deutsch v. United States, 943 F. Supp. 276, 279 (W.D.N.Y. 1996) (quoting Billiteri v. United States Bd. of Parole, 541 F.2d 938, 946 (2d Cir. 1976)).  In Duamutef v. INS, 386 F.3d

172 (2d Cir. 2004), the Second Circuit emphasized that "jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty." Id. at 180.

The INS, citing Immigration and Nationality Act ("INA") § 238(a)(3)(B), codified at 8 U.S.C. § 1228(a)(3)(B), argues that Petitioner has no clear right to be deported prior to his release from state custody, nor does BICE have a duty to deport him prior to the termination of his state sentence. (Resp't Resp. to Order to Show Cause 3-4.)  Petitioner argues that mandamus is proper, and asserts that during his sentencing, the state court judge stated that if deportation proceedings were "commenced and imminent," the state court would entertain motions to vacate the plea on condition of deportation.  Moreover, Petitioner claims that the state court judge stated that if deportation proceedings were commenced, there would be no reason for the state court to keep Petitioner in state custody, and therefore, he would be deported to Guyana. (Pet'r Resp. to Order to Show Cause 1.)[3]

Petitioner has no clear right to deportation prior to the expiration of his term of incarceration, and the INS has no obligation to remove him prior to his release from state custody.  According to 8 U.S.C. § 1228, which governs the removal of aliens convicted of committing aggravated felonies, "the Attorney General shall provide for the initiation and *to the extent possible*, the completion of deportation proceedings . . . prior to the alien's release from incarceration." 8 U.S.C. § 1228(a)(3)(A) (emphasis added).  The section that immediately follows, however, provides that nothing in the law "shall be construed as requiring the Attorney General to effect the removal of any alien sentenced to actual incarceration, before release from

---

[3] Petitioner cites to pages 14 and 15 of the transcript of the state court sentencing proceeding, however, no such transcript was attached as an exhibit to his response.

the penitentiary or correctional institution where such alien is confined." Id. § 1228(a)(3)(B). Section 1228, although it purports to "assure[] expeditious removal following the *end* of the alien's incarceration for the underlying sentence," gives Petitioner no right to petition for an order of mandamus compelling the United States or the INS to remove him *prior* to his release from state prison. See Bell v. INS, 292 F. Supp. 2d 370, 372 (D. Conn. 2003) (noting that "an inmate ordinarily remains in the custody of the correctional institution until his or her sentence is complete . . . because an inmate cannot be deported while imprisoned by the state") (internal citations omitted).

Petitioner in this case is still serving his state sentence, which does not expire until May 18, 2014. Even though the state court indicated that it would entertain a motion to release Petitioner for purposes of deportation, the INS does not accept custody of a deportable alien from the state until the alien is under a final order of deportation and the INS is prepared to immediately deport the alien. According to the INS, BICE will take custody of Petitioner and immediately deport him upon completion of his state prison sentence.

District courts within this Circuit have denied mandamus as well as habeas corpus relief to aliens in similar cases. In Andriianov v. Meisner, No. 97-CV-781, 1998 U.S. Dist. LEXIS 2746, 1998 WL 106239 (N.D.N.Y. Mar. 3, 1998), for example, the petitioner, a New York state prisoner who had been ordered deported by an IJ, petitioned for a writ of mandamus and habeas corpus requiring his immediate deportation. Id. at *1. The state parole board authorized the petitioner's conditional parole for purposes of deportation, however, the INS could not immediately deport him due to a delay in obtaining travel documents because the IJ had designated Czechoslovakia (which no longer exists) instead of the Czech Republic in his removal

order. Id. at *2. The district court rejected the petitioner's claim that his grant of parole entitled him to immediate INS custody and deportation. Id. at *3-4. In denying mandamus relief, the district court relief on former INA § 242A (renumbered in INA § 238), which provided that the Attorney General is not required "to effect the deportation of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined." Id. at *4 (quoting INA § 242A(a)(3)(B), codified at 8 U.S.C. § 1252a(a)(3)(B), renumbered INA § 238(a)(3)(B), codified at 8 U.S.C. § 1228(a)(3)(B))). Similarly, in Santana v. Giambruno, No. 97-CV-850, 1998 U.S. Dist. LEXIS 23435, *6-8, 1998 WL 295666 (N.D.N.Y. May 28, 1998), the petitioner was also a state prisoner who was ordered deported and the New York State Parole Board had granted the petitioner a Conditional Parole for Deportation Only. The court denied the petitioner's request for writ of mandamus or habeas corpus while he was still in state custody on the grounds that the INS had no affirmative duty to deport Petitioner prior to the expiration of his sentence and Petitioner no absolute right either to be released from state custody or to be immediately deported, even though he had been paroled for deportation purposes. Two district courts in this District have reached similar results. See Bell, 292 F. Supp. 2d at 372 (denying mandamus relief on the ground that "[the petitioner] has no clear right to release from state custody, regardless of whether he had been voted to parole"); Ferris v. INS, 303 F. Supp. 2d 103, 107-108 (D. Conn. 2004) (same).

Accordingly, because Petitioner has no clear right to be released from state custody or to be immediately deported, his petition for a writ of mandamus is denied.

    **B.**    **Habeas Jurisdiction**

Given the liberality with which pro se pleadings are treated, the Court could also interpret

5

this petition as one for habeas corpus pursuant to 28 U.S.C. § 2241, seeking relief from state custody in order to be deported.

The Second Circuit has held that "a jurisdictional prerequisite for the granting of a writ of habeas corpus under 28 U.S.C. § 2241 is that the petitioner be 'in custody.'" Simmonds v. INS, 326 F.3d 351, 354 (2d Cir. 2003); see also 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States."). As such, the writ must be sought against the authority or person that has custody of the petitioner. See Rumsfeld v. Padilla, 542 U.S. 426, 434, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004) ("the proper respondent to a habeas petition is the person who has custody over the petitioner") (internal quotation marks and citation omitted).

In the typical case, a detainee's "custodian," for purposes of habeas jurisdiction, "is the warden of the prison or facility where the detainee is held[,] . . . because it is the warden that has day-to-day control over the prisoner and who can produce the actual body." Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994) (citing Ex Parte Endo, 323 U.S. 283, 306, 89 L. Ed. 243, 65 S. Ct. 208 (1944); Brittingham v. United States, 982 F.2d 378 (9th Cir. 1992); Guerra v. Meese, 786 F.2d 414 (D.C. Cir. 1986)); see also Padilla, 542 U.S. at 435 ("This custodian . . . is 'the person' with the ability to produce the prisoner's body before the habeas court.") (quoting 28 U.S.C. § 2242); accord Billiteri v. United States Bd. of Parole, 541 F.2d 938, 948 (2d Cir. 1976) (warden of correctional facility where a petitioner is incarcerated, not the parole board, is the "custodian" of a detainee "who is under the control of a warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confinement"). The authority with physical custody over the petitioner, however, is not always the only authority

with "legal" custody sufficient to confer subject matter jurisdiction. See Bell, 292 F. Supp. 2d at 373 (citing Simmonds, 326 F.3d 351). In Simmonds, the Second Circuit repeated the well established rule that "the writ is available to those who, although not actually imprisoned, suffer such a curtailment of liberty as to render them 'in custody.'" 326 F.3d at 354. Moreover, the Second Circuit recognizes custody in a future jailor where "there is a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence will seek its enforcement." Id. at 355 (quoting Frazier v. Wilkinson, 842 F.2d 42, 45 (2d Cir. 1988)).

Although the Second Circuit has not resolved the issue, "the majority of circuits has held that the filing of a detainer, alone, does not create custody in the INS," id., and the majority of district courts within this Circuit have followed that authority, see, e.g., Bell, 292 F. Supp. 2d at 373. The Second Circuit has clearly established, however, that a petitioner's "final order of removal is sufficient, by itself, to establish the requisite custody" under § 2241. Simmonds, 326 F.3d at 354; accord Ferris, 303 F. Supp. 2d at 108. The court's reasoning in Simmonds was based on the fact that when a prisoner who is under a final order of removal is released from state prison, BICE is required to take him into physical custody. See 8 U.S.C. §§ 1231(a)(1)(B)(iii), 1231(a)(2) (mandating detention when the ground for removal is the commission of an aggravated felony or a crime relating to a controlled substance).

In Simmonds, however, the petitioner was challenging his final order of removal. Respondent, citing Duamutef v. INS, 386 F.3d 172 (2d Cir. 2004), argues that this case should be distinguished from Simmonds on the ground that Petitioner is not challenging the order of removal itself nor his future INS confinement. In Duamutef, the district court had determined that Duamutef was not in INS custody because he was not challenging his final order of removal;

7

the court reasoned that "under <u>Simmonds</u>, constructive custody is only available insofar that a petitioner is challenging the future confinement." 386 F.3d at 176-77 (citing <u>Duamutef v. INS</u>, No. CV-02-1345 (DGT), 2003 U.S. Dist. LEXIS 8059, 2003 WL 21087984, *3 (E.D.N.Y. May 14, 2003)). On appeal, the Second Circuit decided the case on other grounds and therefore did not reach the issue of whether Duamutef was "in custody" of the INS. The <u>Duamutef</u> court did note, however, that it was "reluctant to adopt the District Court's holding that the principles driving the <u>Simmonds</u> holding could not be extended to a case like Duamutef's." <u>Duamutef</u>, 386 F.3d at 178. Another court within this district rejected the same argument made by Respondent here, and held that even if a petitioner is not challenging the final order of removal, the fact that he was "subject to a final order of removal" was "sufficient to establish that [the petitioner] is in BICE custody for purposes of habeas jurisdiction." <u>Gillies v. Strange</u>, No. 3:05cv1273 (SRU), 2005 U.S. Dist. LEXIS 33521, *16 n.7 & *17 (D. Conn. Dec. 6, 2005); <u>see also</u> <u>Ferris</u>, 303 F. Supp. 2d at 108 (relying on <u>Simmonds</u> to find that the petitioner was in the custody of the INS and therefore, that the court had jurisdiction over the habeas petition because the petitioner was subject to a final order of removal); <u>cf.</u> <u>Bell</u>, 292 F. Supp. 2d 370 (finding that the petitioner was not in INS custody and that the court did not have jurisdiction over his habeas petition when the petitioner was not subject to a final order of removal, but only the lodging of an INS detainer). As in <u>Duamutef</u>, however, this Court need not determine whether Petitioner is in INS or BICE custody because there is another jurisdictional basis on which to dismiss his claim.

     Petitioner is presently incarcerated by Connecticut state officials and is currently serving his sentence on a state conviction. Unlike the petitioners in <u>Gillies</u> and <u>Ferris</u>, there is no indication here that Petitioner has completed the minimum term of his fifteen-year sentence, that

he has been granted conditional parole or that he is parole-eligible.[4] See Gillies, 2005 U.S. Dist. LEXIS 33521, at *2 (the petitioner was "voted to parole by the State of Connecticut Department of Corrections" and "attached a fully executed 'Conditions of Parole' form to his habeas petition"); Ferris, 303 F. Supp. 2d at 106 ("Ferris was 'voted to parole' by the Connecticut Board of Parole.")  Indeed, the only evidence on record indicates that Petitioner's state prison sentence does not expire until May 18, 2014. (See Connecticut Dep't of Corrections Inmate Information.)

The Second Circuit has held that "[t]he law is clear that while [a petitioner] is still serving his state sentence, the Attorney General is under no obligation to execute a deportation order." Duamutef, 386 F.3d at 179.  Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," however, § 1231(a)(1)(B)(iii)—which pertains to persons such as Petitioner who are otherwise "detained or confined"—clarifies that the "removal period" referenced in subsection (a)(1)(A) does not begin until "the date the alien is released from detention or confinement." Moreover, under § 1231(a)(4)(A), "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." "Until [Petitioner] is released by the state, and the 90-day removal period specified in § 1231(a)(1)(A) is triggered, the pace at which the Attorney General proceeds to take [Petitioner] into custody and execute the

---

[4]   In Gillies, the court held that the petitioner was in BICE custody because: "(1) BICE lodged an immigration detainer against Gillies, and that detainer is no longer serving a notice function, but rather is the reason why Gillies is being confined indefinitely; (2) Gillies is subject to a final order of removal, and has been paroled, so BICE is required by law to take him into physical custody; (3) Gillies was paroled, and but for the BICE detainer, the DOC would have processed Gillies' release plan; (4) BICE has had the power to lawfully pick up Gillies since June 1, 2005; and (5) BICE cannot defeat jurisdiction by using the state as its custodial agent." 2005 U.S. Dist. LEXIS 33521, at *8.  Because Petitioner has not been paroled and is not yet eligible for release, the Gillies reasoning does not apply to this case.

removal order is within his discretion and thus beyond mandamus or habeas review." <u>Duamutef</u>, 386 F.3d at 180.  Accordingly, this Court lacks subject matter jurisdiction over both Petitioner's mandamus claim and his habeas claim.

### III.   CONCLUSION

For the reasons set forth herein, the Petition for Writ of Mandamus [Doc. No. 3] is **dismissed**.  The clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, November  20 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court